**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| VICKI ANNE ERAZO,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>Defendant. | ) | Civil Action No. 25-CV-13667-AK |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S MOTION FOR ORDER AFFIRMING DECISION OF COMMISSIONER**

**ANGEL KELLEY, D.J.**

Claimant Vicki Anne Erazo seeks judicial review of the denial of her claim for disability insurance benefits ("SSDI") and supplemental security income ("SSI") with the Social Security Administration ("SSA"), issued by an Administrative Law Judge ("ALJ") on April 16, 2025. Pending before the Court are Erazo's Motion for Judgment on the Pleadings [Dkt. 7] and the Commissioner's Motion to Affirm the Decision [Dkt. 9]. In her Motion, Erazo claims that the ALJ erred by improperly discounting a medical opinion by Dr. Sandra Vallery and failing to properly consider her subjective complaints. She also contends that the Appeals Council erred in denying her appeal because the Council failed to account for new post-hearing evidence, namely, a letter from her treating therapist. For the following reasons, Erazo's Motion for Judgment on the Pleadings is **DENIED**, and the Commissioner's Motion for Order Affirming the Decision is **GRANTED**.

## I. BACKGROUND

Claimant Vicki Erazo was born on August 8, 1982. [Dkt. 6-2 at 60]. Erazo suffers from anxiety disorder, depressive disorder, and trauma-related disorder stemming from a February 2019 incident, in which a dog bit her while delivering mail. [Id. at 50, 55]. Prior to filing for disability benefits and until March 29, 2022, she worked as a mail carrier for the City of Lowell. [Id. at 50].

Erazo filed claims for SSDI and SSI with the SSA on July 7 and August 17, 2022, respectively. [See Dkt. 6-1 at 2]. Her claims were initially denied. [See id. at 1]. Erazo then requested a hearing before an ALJ, which was held telephonically on November 4, 2024. [Dkt. 6-2 at 47]. During the hearing, Erazo and a vocational expert, Christine Spaulding, provided testimony. [See id.]. Erazo also provided two medical evaluations and several years of medical and therapy records. [See id.].

On April 16, 2025, the ALJ issued a written determination that Erazo was not disabled within the meaning of the Social Security Act. [Id. at 62]. Specifically, the ALJ found that Erazo has severe impairments of anxiety disorder, depressive disorder, and trauma-related disorder. [Id. at 50]. However, the ALJ concluded that Erazo maintains a residual function capacity ("RFC") to complete a full range of light work, except that she can understand, remember, and carry out simple instructions in a non-assembly-line, production-paced setting; can never interact with the general public; can occasionally interact with coworkers and supervisors; can make simple work-related decisions; and can adapt to simple changes in a routine work setting. [Id. at 53]. While the ALJ found that Erazo had no past relevant work, in consideration of her age, education, work experience, and RFC, the ALJ found there were jobs that exist in significant numbers in the national economy that Erazo could perform. [Id. at 60]. As a result, the ALJ concluded that

Erazo is not disabled. [Id. at 62].

Erazo sought review at the Appeals Council, submitting new medical evidence in support of her request, including a letter from her treating psychiatrist and additional medical records. [See id. at 2]. On October 9, 2025, the Appeals Council summarily denied her appeal, rejecting the evidence as not showing a reasonable probability that it would change the outcome of the ALJ's decision. [Id. at 2-3]. Appeal to this Court followed. [See Dkt. 1].

## II. EVIDENCE BEFORE THE ALJ AND APPEALS COUNCIL

### A. Erazo's Testimony

During her November 4, 2024, hearing, Erazo testified about her mental health history and the impact of her conditions on daily activities. For example, due to social anxiety and panic attacks, she can only complete activities like grocery shopping in the early morning, when stores are less crowded. [Dkt. 6-2 at 96]. On good days, she can clean, socialize with her children, journal, paint, and attend a virtual women's group and church service, [Id. at 97-99, 110]. On bad days, she lashes out at family and shuts down. [Id. at 97]. She has also had recurring nightmares about dogs, an out-of-body experience at a family gathering, and avoids going to social functions out of fear of having another similar experience. [Id. at 87, 109].

Erazo also testified about the treatment she has received to address her mental and physical health conditions. [Id. at 78]. She has visited multiple providers over the past several years and takes medication to manage her conditions, including three daily pills and specialized pills for unexpected panic attacks. [Id. at 78-80, 100-02]. Erazo testified that the medication generally improved her symptoms. [Id. at 102].

Erazo also described her employment history and how her conditions affect her ability to complete job-related tasks. [Id. at 85]. In 2019, she worked as a mail carrier for approximately a year and a half. [Id.]. In this position, she interacted with the public and independently managed

many of her responsibilities. [Id. at 86]. However, in February 2019, she was bitten by a dog while delivering mail, which caused her significant trauma and ultimately led to her resignation six months later. [Id. at 87-90, 107]. She then worked part-time at Dunkin' Donuts, as a cashier at Walgreens, and at a school cafeteria. [Id. at 91-92]. In these positions, she interacted regularly with the public but would occasionally struggle because of her anxiety. [Id.]. Erazo also described being bullied by a supervisor, which exacerbated her depression and anxiety; however, she struggled to speak up for herself. [Id. at 123-26].

Finally, Erazo testified regarding her living arrangements. She lives in an apartment with her boyfriend, two minor children, a friend, and the friend's daughter. [Id. at 93-95]. She has a German Shepherd Mastiff mix, which she keeps for emotional support. [Id. at 104-05].

**B. Vocational Expert's Testimony**

Vocational Expert Christine Spaulding also testified at the November 4, 2024, hearing. The ALJ first asked Spaulding to characterize the mail carrier job, to which she responded that it requires medium to heavy physical demand. [Id. at 113]. The ALJ then presented a hypothetical of an individual of Erazo's age, education, and work experience and with limitations such as absenteeism two or more times a month. Spaulding answered that such an individual could not perform Erazo's past relevant work of a mail carrier. [Id. at 114-15]. She estimated that the off-task toleration for such a job would be approximately six minutes per hour, and that two additional daily, unscheduled, fifteen-minute breaks or post-training, individualized support would not be tolerated without special accommodation. [Id. at 115-16]. The ALJ then asked if such an individual could perform any alternative jobs. [Id. at 117]. Spaulding responded in the affirmative, listing a price marker, cleaner, mail sorter, document preparer, and sorter as examples. [Id.].

Erazo's attorney then questioned Spaulding, asking if her opinion would change if the

hypothetical employee was too overwhelmed to ask questions of their supervisor, or had weekly, thirty-minute crying spells. [Id. at 120-22]. Spaulding responded that both these behaviors would be work preclusive. [Id.].

### C. Medical Records

The ALJ reviewed and considered two medical evaluations in rendering his decision. First, on March 22, 2023, Erazo underwent a psychological evaluation by Dr. Lynn Cattanach. [Dkt. 6-7 at 670]. In the report, Dr. Cattanach summarizes Erazo's background, her behavior during the evaluation, her family and medical history, and her daily activities. [Id. at 670-72]. Dr. Cattanach found that Erazo generally appeared stable, that she can "tolerate the minimum social demands of simple-task settings, but would do best with little interpersonal contact," and that she "cannot reliably tolerate sustained contact with the general public." [Id. at 674]. She also concluded that Erazo's "ability to handle usual work pressures in a work setting is limited." [Id.]. Upon reviewing Dr. Cattanach's evaluation, the ALJ considered it persuasive and adopted her conclusions. [Dkt. 6-2 at 58].

Second, on April 16, 2024, Erazo underwent a psychological evaluation with Dr. Sandra Vallery. [Dkt. 6-7 at 775]. Like Dr. Cattanach, Dr. Vallery summarized Erazo's medical, family, and employment history. [Id. at 775-78]. Dr. Vallery observed that Erazo generally appeared stable but frequently rambled. [See id. at 775, 780]. She concluded that Erazo could not "consistently remember work-like tasks," "sustain her attention for long period of time," or "consistently ask questions of supervisors," and as a result, "would need extra supervision to learn new information" given her anxiety and depression. [Id. at 780]. On review of Dr. Vallery's evaluation, the ALJ found the report internally inconsistent, that the conclusions lacked factual or evidentiary support, and was contradicted by other objective evidence in the longitudinal record. [Dkt. 6-2 at 59]. He also noted it was based on a one-time meeting with

Erazo. [Id.]. Thus, the ALJ found Dr. Vallery's opinion to be unpersuasive. [Id.].

In addition to Dr. Vallery's and Dr. Cattanach's medical opinions, the ALJ considered several years of Erazo's medical treatment records from various providers, ranging from November 5, 2015, to December 11, 2024. [See Dkt. 6-1 at 4-6].

### D. Post-Hearing Letter

After the hearing, Erazo submitted a May 6, 2025, letter from Amber Villanueva—a Licensed Social Worker and Erazo's long-term therapist—to the Appeals Council in support of her appeal. [Dkt. 6-2 at 22]. Erazo did not submit Villanueva's letter to the ALJ, instead presenting it to the Appeals Council as new evidence after the hearing. Villanueva's letter explains that she diagnosed Erazo with social anxiety disorder, persistent depressive disorder, post-traumatic stress disorder, and generalized anxiety disorder. [Id.]. Villanueva describes Erazo's struggles to attend family events, grocery stores, or other events with people, and explains how her conditions impact her ability to sleep and work. [Id.]. She also documents Erazo's attempts to manage her condition, such as attending therapy, an online women's group, and church. [Id.]. The Appeals Council summarily rejected the letter, finding that it would not have changed the outcome.

## III. LEGAL STANDARD

This Court has the power to affirm, modify, or reverse a decision of the Commissioner upon review of the pleadings and record. 42 U.S.C. § 405(g). In reviewing the ALJ's decision, the Court is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citing Manso-Pizarro v. Secretary, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriguez Pagan v.

Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) (citing Lizotte v. Sec'y of Health & Hum. Servs., 654 F.2d 127, 128 (1st Cir. 1981)). Substantial evidence is defined as "more than a mere scintilla," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial-evidence review "is more deferential than it might sound to the lay ear." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019).

The standard of judicial review of a determination by the Appeals Council is even more deferential than that of an ALJ. See Catherine I v. Saul., No. 19-CV-394, 2020 WL 2730907, at *10 (D.R.I. May 26, 2020) (quoting Mills v. Apfel, 244 F.3d 1, 5-7 (1st Cir. 2001)). "[A] claimant can only prevail on a challenge to such a decision if he can show 'that the Appeals Council was 'egregiously mistaken' in its decision to deny [the] Plaintiff's request for review.'" Arrington v. Colvin, 216 F. Supp. 3d 217, 231 (D. Mass. 2016) (quoting Kirby v. Astrue, No. 07-CV-422, 2008 WL 2787926, at *11 (D.R.I. July 17, 2008)), aff'd sub nom. Arrington v. Berryhill, No. 17-1047, 2018 WL 818044 (1st Cir. Feb. 5, 2018). The First Circuit has explained that this standard is "exceedingly narrow," and that "the party challenging the [Appeals Council]'s denial must demonstrate an error that is 'egregious,' 'flagrant,' or 'extremely or remarkably bad.'" Lesieur v. O'Malley, No. 23-1022, 2024 WL 513702, at *1 (1st Cir. Feb. 8, 2024) (quoting Ortiz Rosado ex el. Rosado Guitierrez v. Barnhart, 340 F. Supp. 2d 63, 67 (D. Mass. 2004)). For instance, if the supplementary evidence is "starkly inconsistent with the ALJ's determination," the Appeal Council's denial of review constitutes an egregious mistake. Orben v. Barnhart, 208 F. Supp. 2d 107, 111 (D.N.H. 2002).

## IV. DISCUSSION

On appeal to this Court, Erazo contends that (1) the ALJ improperly discounted Dr. Vallery's opinion; (2) the ALJ erred in rejecting Erazo's subjective complaints; and (3) the Appeals Council failed to consider newly submitted evidence, namely, Villanueva's letter.

### A. ALJ's Review of Dr. Sandra Vallery's Opinion

First, Erazo argues that the ALJ erred in finding Dr. Vallery's opinion to be unpersuasive. In response, the Commissioner contends that the ALJ's determination is supported by substantial evidence. The Court agrees with the Commissioner. As explained below, Erazo's arguments largely mischaracterize the ALJ's decision and, in several instances, ask the Court to reweigh the evidence.

In evaluating an application for benefits, an ALJ does not "defer or give any specific weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider each medical opinion and "articulate" how persuasive he finds the opinions from each medical source through the lens of five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. See id. § 404.1520c(c). "Of the five factors, the 'most important'" are supportability and consistency. Albro v. O'Malley, 740 F. Supp. 3d 26, 37 (D. Mass. 2024) (citing 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2)). "Consistency" means that "the more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(1)-(2).

"An ALJ's decision to accord a treating physician's opinion with little weight will be sustained on review so long as one of the reasons given by the ALJ is proper and adequately supported." Devine v. Kijakazi, 627 F. Supp. 3d 10, 23 (D. Mass. 2022) (quoting Harrison v.

Saul, No. 20-CV-10295, 2021 WL 1153028, at *6 (D. Mass. Mar. 26, 2021)). By contrast, remand is warranted when an ALJ's evaluation of a medical opinion is factually inaccurate, mischaracterizes holdings, or if the ALJ "ignore[s] medical evidence or substitute[s] her judgment for that of medical professionals." Stephanie S. v. O'Malley, No. 23-CV-30046, 2024 WL 4028224, at *5 (D. Mass. Sep. 3, 2024) (citing Nguyen, 172 F.3d at 33); Jonathan P. v. Saul, No. 19-CV-346, 2020 WL 3958331, at *5 (D.R.I. July 13, 2020)).

In the disputed examination report, Dr. Vallery concludes that Erazo's anxiety and depression negatively impact her memory, attention, ability to ask supervisors questions, and ability to learn without supervision. The ALJ found these conclusions to be unpersuasive. In particular, he pointed out their internal inconsistency, noting Dr. Vallery's observations that Erazo was cooperative, of average intelligence, and had adequate memory, and that Erazo's daily activities include preparing her children for school, visiting other people weekly, running errands, supervising her children for routines, and doing house chores. He also noted that Dr. Vallery's opinion was inconsistent with other objective evidence in the longitudinal record, including Erazo's therapy records, in which the treating physicians noted that she was generally stable with the use of appropriate medication. Finally, he noted that the opinion was based on only a single meeting with Erazo, and thus was not as persuasive as long-term evaluations.

On appeal, Erazo makes several arguments in support of her contention that the ALJ improperly discounted Dr. Vallery's opinion. According to Erazo, the ALJ: (1) mischaracterized certain of Dr. Vallery's conclusions; (2) erred in finding Dr. Vallery's report inconsistent with Dr. Cattanach's report; (3) failed to explain why he rejected Dr. Vallery's conclusions; (4) erred because the longitudinal record supports, rather than contradicts, Dr. Vallery's conclusions; and (5) failed to impartially weigh evidence because he discounted Dr. Vallery's opinion for being

based on one meeting with Erazo, but did not do the same for Dr. Cattanach's opinion. However, none of these arguments are persuasive.

Erazo's first three arguments appear to rest on a misreading of the ALJ's order. For example, Erazo contends that the ALJ mischaracterized Dr. Vallery's opinion in finding that she concluded that Erazo can interact and communicate effectively and get along with others. However, that finding is supporting by Dr. Vallery's report, which states, nearly verbatim, that Erazo "is able to interact and communicate effectively" and "can get along with others." [Dkt. 6-7 at 780].

Erazo similarly contends that the ALJ erred in finding Dr. Vallery's opinion inconsistent with Dr. Cattanach's opinion, because both opined that Erazo might struggle interacting with supervisors. Again, however, Erazo mischaracterizes the ALJ's decision. The ALJ's basis for finding an inconsistency between the two evaluations was not Erazo's ability to interact with supervisors. Rather, the ALJ relied on their differing conclusions concerning "memory, sustained attention, and extra supervision." [Dkt. 6-2 at 59]. Specifically, Dr. Vallery states Erazo "is not able to consistently remember work-like tasks," "is not able to sustain her attention for long periods of time," and that Erazo "would need extra supervision to learn new information." [Dkt. 6-7 at 780]. Dr. Cattanach, by contrast, concluded that Erazo's "ability to understand, remember, and carry out simple instructions is intact," that her "ability to sustain concentration, persistence, and pace for work-related tasks . . . with usual supervision is not limited," and that her "ability . . . to do work-related activities on a consistent, reliable basis is not limited." [Id. at 674]. Dr. Cattanach's conclusion that Erazo can sustain normal attention with usual supervision is directly inconsistent with Dr. Vallery's opinion that Erazo cannot. The ALJ therefore reasonably concluded that the two opinions contained contradictory findings.

Erazo similarly argues that the ALJ failed to explain why he rejected Dr. Vallery's conclusion that Erazo would not be able to "consistently ask questions of supervisors." However, this, again, misreads the ALJ's order. The ALJ expressly explained that this conclusion was unpersuasive because it was inconsistent with other evidence within Dr. Vallery's report. The ALJ pointed to Dr. Vallery's observations that Erazo's mental status was largely intact during the evaluation, that she could independently run errands, attend appointments, monitor and supervise her children, and that she could interact and communicate and get along with others. The ALJ thus explained his basis for finding an internal inconsistency within Dr. Vallery's report and resolved that inconsistency by finding unpersuasive Dr. Vallery's conclusion that Erazo would struggle asking supervisors questions. That explanation is sufficient to survive substantial-evidence review.

Erazo's next argument fails because she effectively asks the Court to reweigh the evidence rather than determine whether the ALJ applied the correct legal standards and supported his findings with substantial evidence. Erazo contends that some of the evidence in the longitudinal record supports, rather than undermines, Dr. Vallery's conclusion that Erazo cannot communicate effectively with supervisors. However, the issue for this Court is not whether Dr. Vallery's opinion was consistent with *some* portions of the treatment record, but rather, whether the ALJ's finding that her opinion was unpersuasive is supported by *substantial evidence* in the record, even if that same record could arguably also justify a different conclusion. See Rodriguez Pagan, 819 F.2d at 3. The Court is satisfied that this standard was met here. The ALJ acknowledged evidence of Erazo's struggles being in the presence of other people, including her recent out-of-body experience and panic attacks while grocery shopping. But he also considered other evidence in the longitudinal record that weighed against her. For

example, he noted that objective mental status testing showed normal speech, euthymic affect, linear and logical thoughts, and intact cognition, insight, and judgment. Similarly, recent psychiatric notes indicated that Erazo was overall relatively stable on medication. Erazo also reported attending various social events, including a vacation bible school, camping, babysitting, and family holidays. Weighing the totality of the evidence, the ALJ determined that Dr. Vallery's opinion was not supported by the longitudinal record. This satisfies the substantial-evidence standard.

Erazo's remaining argument likewise fails to establish reversible error. Erazo briefly contends that the ALJ discounted Dr. Vallery's opinion because it was based on a single evaluation, but did not similarly discount Dr. Cattanach's opinion, even though it was also based on a single meeting. However, the ALJ identified multiple reasons for finding Dr. Vallery's opinion unpersuasive. As discussed above, the ALJ explained that Dr. Vallery's conclusions were inconsistent with the longitudinal record and internally inconsistent. The ALJ could reasonably find Dr. Vallery's opinion unpersuasive for these additional reasons, while finding Dr. Cattanach's opinion persuasive based on other aspects. See Richardson v. Saul, 565 F. Supp. 3d 154, 167 (D.N.H. 2021) ("Only where contrary medical opinions are equally persuasive in terms of both supportability and consistency is the ALJ required to discuss their relative persuasiveness in terms of the treatment or examining relationship, specialization, and other factors.") (citing 20 C.F.R. § 404.1520c(b)(3)).

Accordingly, the Court finds that the ALJ's review of Dr. Vallery's opinion and his determination that the opinion as unpersuasive are supported by substantial evidence. Erazo has not identified any material factual inaccuracies or mischaracterizations, nor has Erazo shown that the ALJ "ignore[d] medical evidence or substitute[d] [his] judgment for that of medical

professionals." Stephanie S., 2024 WL 4028224, at *5.

### B. ALJ's Review of Subjective Complaints

Erazo next argues the ALJ erred in determining her RFC because he relied exclusively on objective evidence and failed to account for her subjective complaints concerning her social anxiety. Specifically, Erazo contends that the ALJ failed to acknowledge that her telehealth and medication management meetings are virtual, rather than in-person, and that she has been prescribed multiple medications to treat her anxiety. Erazo further argues that the ALJ improperly concluded that evidence of her ability to function within the home was inconsistent with her subjective reports of difficulty managing her social anxiety.[1]

In assessing a claimant's RFC, an ALJ must "evaluate the intensity and persistence of an individual's symptoms . . . and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." Coskery v. Berryhill, 892 F.3d 1, 4 (1st Cir. 2018) (quoting SSAR 16-3p, 82 Fed. Reg. 49462, 49464 (Oct. 25, 2017)). In doing so, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. (quoting 82 Fed. Reg. at 49464). While an ALJ "must consider a claimant's subjective allegations of functional limitations," the ALJ "is not required to take those allegations at face value and may reject them where they are unsupported

[1] Although Erazo includes this argument in the section of her brief addressing the ALJ's rejection of Dr. Vallery's opinion, upon reviewing her argument and the caselaw cited therein, the Court understands Erazo to raise it in support of her contention that the ALJ disregarded her subjective complaints. [See Dkt. 8 at 18 (citing Samantha B. v. Bisignano, No. 25-CV-00004, 2025 WL 2992378 (D.R.I. Oct. 24, 2025), report and recommendation adopted, No. 25-CV-00004, 2025 WL 3283309 (D.R.I. Nov. 25, 2025))].

by the medical evidence, treatment history, and activities of daily living." Richards v. Kijakazi, 554 F. Supp. 3d 242, 252 (D. Mass. 2021) (citing Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 194-95 (1st Cir. 1987); Avery v. Sec'y of Health & Hum. Servs., 797 F.2d 19, 22-23 (1st Cir. 1986); Winn v. Heckler, 762 F.2d 180, 181 (1st Cir. 1985); 20 C.F.R. § 404.1529)). Where "there are inconsistencies in the record, the ALJ may discount subjective complaints of pain." Frustaglia, 829 F.2d at 194 n.1 (citing Underwood v. Bowen, 807 F.2d 141, 143 (8th Cir. 1987)).

The record demonstrates that the ALJ exhaustively considered Erazo's subjective complaints and reasonably found them inconsistent with the other evidence in the record. Contrary to Erazo's contention, the ALJ did not disregard her subjective reports concerning her anxiety. Rather, he considered those reports alongside the medical, vocational, and other evidence. He specifically noted Erazo's testimony that she attends virtual, rather than in-person, bible groups, as well as acknowledged a written account from a third-party documenting her struggles to attend in-person group functions. The ALJ also noted Erazo's medication history, including Citalopram, Augmentin, Propranolol, Celexa, Buspar, Trazadone, Abilify. The ALJ thus did not ignore or misstate Erazo's subjective complaints.

The ALJ then reasonably determined that Erazo's subjective complaints about the severity and persistence of her conditions were unsupported by other record evidence. And, as explained above, there was substantial evidence in the record supporting the ALJ's conclusions. The ALJ cited Dr. Cattanach's observations that Erazo's overall sufficient cognitive, social, and adaptive functioning were normal; counseling records documenting that her symptoms were stable with medication usage; and Erazo's accounts of recent social activities outside the home. From this evidence, the ALJ concluded that the severity and persistence of Erazo's anxiety and

depression were less intense than her testimony suggested. To the extent Erazo asks the Court to reach a different conclusion based on the same evidence, she is asking the Court to reweigh the evidence, which the Court may not do. Accordingly, the Court does not adopt Erazo's conclusion that the ALJ erred by failing to consider Erazo's subjective complaints.

**C. Appeals Council's Review of New Evidence**

Finally, Erazo argues that the Appeals Council erred in denying her appeal. In support, she contends that she submitted a letter from her treating therapist as new, post-hearing medical evidence, which the Appeals Council improperly determined would not have changed the ALJ's decision. The Court is not persuaded.

Under SSA regulations, the Appeals Council must consider new and material evidence if the claimant shows that such evidence "relates to the period on or before the date of the [ALJ's] hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Again, this Court may overturn the Appeals Council's determination only if it "'egregious,' 'flagrant,' or 'remarkably bad,'" such as if the new evidence is starkly inconsistent with the ALJ's determination. Lesieur, 2024 WL 513702, at *1; Orben, 208 F. Supp. 2d at 111.

Villanueva's letter is a brief, one-page document. In short, it provides the following observations: (1) that for the past three or so years, Erazo "has struggled with going to places where there will be many people or people she isn't close with"; (2) that Erazo has had to leave, or entirely avoid, family events, grocery stores, and other places with people, including strangers, distant family members, and acquaintances alike; (3) Erazo has dissociated at a family event; (4) Erazo is able to attend social situations about once a week; (5) she remains vigilant about dogs following her February 2019 dog bite incident; (6) her mental health conditions impact her ability to feel positive emotions, do chores, focus and communicate, regulate emotions, sleep,

work, and interact interpersonally.

These observations are largely cumulative of other evidence already present in the record and provide no additional material information regarding Plaintiff's functional abilities, nor do they contradict the ALJ's findings or otherwise undermine his conclusions. The Appeals Council therefore reasonably determined that the letter would not have changed the ALJ's decision.

In response, Erazo argues that letter could have changed the ALJ's decision because, unlike Dr. Vallery's opinion, it was based on a long-term treatment relationship and therefore could have filled the evidentiary gap created by the ALJ's decision to discount Dr. Vallery's opinion. However, Erazo overstates the significance of the letter. Under the applicable regulations, a claimant's impairments may be established only by evidence from "an acceptable medical source," which is limited to physicians and psychologists. 20 C.F.R. § 404.1521, 416.921. It does not include licensed social workers. Lindsay L. v. Kijakazi, No. 22-CV-00016, 2022 WL 4724098, at *4 (D.R.I. Oct. 3, 2022), aff'd sub nom. Lesieur, 2024 WL 513702. Although the ALJ could have considered Villanueva's letter as part of his review, the letter did not provide a medical opinion from an acceptable medical source establishing Erazo's impairments or functional limitations. Accordingly, the Appeals Council did not err in determining that, even considering Villanueva's letter, the outcome would have remained the same.

## V. CONCLUSION

Based on the foregoing, the Commissioner's Motion to Affirm is **GRANTED** and Erazo's Motion for Judgment on the Pleadings is **DENIED**.

**SO ORDERED.**

Dated: October 20, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge